JOHNNY WATKINS, JR.

V.

COMMONWEALTH OF VIRGINIA

Record No. 841551

JOHNNY WATKINS, JR.

V.

COMMONWEALTH OF VIRGINIA

Record No. 841913

Decided June 14, 1985, at Richmond

Present: All the Justices

*Henry G. Crider (E. L. Motley, Jr.,* on brief), for appellant. (Record No. 841551.)

*James E. Kulp, Senior Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee. (Record No. 841551.)

*E. L. Motley, Jr. (Henry G. Crider,* on brief), for appellant. (Record No. 841913.)

*Frank S. Ferguson, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee. (Record No. 841913.)

COCHRAN, J., delivered the opinion of the Court.

A jury found Johnny Watkins, Jr. (Watkins), guilty of the capital murder of Betty Jean Barker on November 14, 1983, in the commission of robbery while armed with a deadly weapon. The jury also found Watkins guilty of the robbery itself and use of a firearm in the commission of a felony and fixed his punishment for these two offenses at confinement in the penitentiary for life and

for two years, respectively. In the bifurcated proceeding mandated by Code §§ 19.2-264.3 and -264.4, the jury fixed Watkins's punishment for capital murder at death, based upon findings of Watkins's future dangerousness and the vileness of the crime. After considering the probation officer's report filed pursuant to § 19.2-264.5, the trial court by final order entered July 13, 1984, sentenced Watkins in accordance with the jury verdicts.

In a subsequent trial, another jury found Watkins guilty of three offenses, the capital murder of Carl Douglas Buchanan on November 22, 1983, in the commission of robbery while armed with a deadly weapon, the robbery itself, and use of a firearm in the commission of a felony. The jury fixed his punishment for robbery and use of a firearm at confinement in the penitentiary for life and for two years, respectively. Based upon findings of Watkins's future dangerousness and the vileness of the crime, the jury fixed his punishment for capital murder at death. After considering the probation officer's report, the trial court by final order entered September 28, 1984, sentenced Watkins in accordance with the jury verdicts.

In each of the capital-murder cases, we have consolidated the automatic review of the death sentence with Watkins's appeal from his conviction and have given them priority on our docket. Although the two cases were briefed and argued before us independently of each other, they raised many common issues. Accordingly, we are using the format of one opinion in which to incorporate our views on all issues.[1]

## I. FACTS.

### A. Barker Murder.

On November 13, 1983, Betty Jean Barker reported for work as clerk at a Kwik Stop convenience store about 11:00 p.m. At 2:45 a.m. on November 14, a customer departed after paying her for gasoline. About 3:15 a.m. other customers found the clerk, apparently dead, lying on the floor behind the cash register, the drawer of which was open. The life saving crew, when called to the scene, confirmed that Barker was dead. An autopsy established that she had been struck by three bullets, one in the right cheek, one in the

---

[1] Watkins's convictions in each case of robbery and use of a firearm in the commission of a felony are not before us in these appeals.

upper right chest, and one in the upper left chest. The fatal shot, which perforated the lungs and aorta, was the one in the upper right chest. A fourth bullet, found in the victim's sweater, had not wounded her.

Quentin Nash was the principal witness for the Commonwealth. As an accomplice of Watkins, he had been convicted of the crimes but had not been sentenced. Nash testified that he and Watkins left a card game about 1:30 a.m. on November 14 in Watkins's car. Watkins said he was tired of being "broke" and was going to "rob a place," and then said he was going to the Kwik Stop market to "rob that place." Nash agreed to act as a lookout. They arrived at the Kwik Stop about 2:40 a.m., purchased gas, but then drove across the street because there were other customers in the store. At 3:00 a.m., when they saw the clerk was alone, they returned; Watkins entered the store while Nash remained in the car. Nash, reconsidering the proposed robbery, went in to persuade Watkins not to commit the crime. Watkins, however, had purchased cigarettes. When Barker opened the cash register, Watkins shot her twice, causing her to fall to the floor. Watkins ordered Nash to take the cash register. As Nash ran from the premises with the cash drawer, he saw Watkins leaning over the counter with the firearm in his hand. When Watkins returned to the car, the men left the scene of the crimes. Nash testified that he refused to accept from Watkins any of the money obtained in the robbery. It was established that the amount of $89.89 had been taken by the robbers.

In their investigation of the Buchanan murder, the police found a .22-caliber pistol in a jacket belonging to Watkins. There was uncontradicted expert testimony that one of the bullets removed from Barker's body had been fired from this pistol.

### B. Buchanan Murder.

In the early morning hours of November 22, 1983, Carl Douglas Buchanan was the sole employee working at Fast Fare, a convenience store. It was established that he was alive about 1:30 a.m. A customer who entered the store between 1:45 and 1:50 a.m. observed the cash register open and the money drawer missing. Looking behind the counter, he found Buchanan's body. The police ascertained that there was missing from the cash register the sum of $34.73, including a $2.00 bill whose serial number had been recorded. Local merchants were notified of the existence of

this bill. Later on November 22, Darnell Watkins (Darnell), Watkins's brother, was identified as the person who had tendered the bill that day in paying a store account.

Obtaining a search warrant for Darnell's apartment, the police discovered that the brothers shared a bedroom. The officers found in a jacket in their bedroom credit cards, a driver's license, and other items belonging to Carl Buchanan. In another jacket bearing Watkins's employee identification badge, they found eight empty cartridges and a .22-caliber pistol loaded with six live bullets.

Darnell was the principal witness for the Commonwealth. He admitted his participation in the crimes, for which he had been convicted but not sentenced.

Darnell testified that about midnight on November 21, his brother offered to drive him to a store for cigarettes. On the way, Watkins said, "I might rob some place." After finding one store closed, they proceeded to Fast Fare, which Watkins entered while Darnell remained in the car. No other customers were in the store. Darnell saw his brother point a weapon at the clerk, saw the clerk fall backward, and saw Watkins go to the other side of the counter and take the cash drawer from the cash register. Hearing two shots, Darnell observed Watkins bending down behind the counter. When Watkins returned to the car with the cash drawer and a wallet, he drove away with his brother. Darnell asked Watkins if he had shot the clerk; Watkins replied that he had shot him three or four times in the head and chest. Watkins told Darnell the wallet contained about $40. From the proceeds of the robbery he gave Darnell $42 in repayment of a loan.

Darnell also testified that his brother later attempted to persuade him to accept responsibility for the robbery while Watkins accepted responsibility for the murder under the belief that such separation of guilty conduct would enable Watkins to avoid execution. This testimony was corroborated by a relative in whose apartment the brothers lived.

An autopsy established that Carl Buchanan had been struck by four bullets, one near the left temple, one in the left upper chest, one in the left mid-chest, and one in the right lower back. Either of the chest wounds would have been fatal. The uncontradicted expert testimony was that one of the bullets removed from Buchanan's chest had been fired from the .22-caliber pistol found in Watkins's jacket.

## II. Pretrial Proceedings.

### A. Barker Murder.

1. Motion to Suppress.

Watkins made a pretrial motion to suppress statements given by him to the police. Testimony at the suppression hearing revealed that both Darnell and Watkins were taken to Danville Police headquarters following the search of their apartment on November 22. About 11:00 p.m. the same day, police interrogated Watkins. He was first advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), after which he signed a written waiver of his rights. During questioning, when Watkins stated he wanted to see a lawyer, the interrogation terminated. An officer reduced to writing Watkins's responses during this interview, but Watkins refused to sign the statement.

About 1:00 a.m., Watkins was informed he was being charged with capital murder. He asked why he was being charged. Before giving any explanation, an officer again advised him of his constitutional rights and Watkins executed a second written waiver of his rights. He was then told that Darnell had implicated him in the murder and robbery of Carl Buchanan at the Fast Fare market. When Watkins expressed disbelief, police played for him a portion of Darnell's recorded statement. At Watkins's request, he was allowed to see his brother, and a police officer testified that Watkins asked Darnell, "Did you really snitch on me?" According to the officer, Darnell admitted that he had done so. Watkins then declined to talk about the shooting or take a polygraph test, saying that he wanted "to think about it."

On the morning of November 28, another officer went to the jail to question Watkins further. Watkins was advised of his *Miranda* rights a third time and signed a third waiver form. The officer testified that Watkins said he wanted to talk about the incident. The officer then reduced to writing a statement in which Watkins admitted having shot Buchanan with a pistol he had purchased in 1983 but claimed he shot in self-defense. He signed each page of this statement. The officer said Watkins was cooperative and showed no hesitation in making the statement. The officer made no promises or representations to Watkins to induce the statement, and Watkins never indicated he wanted to stop the questioning or consult with a lawyer. The meeting lasted about 15 minutes.

Watkins testified that he did not simply start telling what he knew at this third interview. Instead, he said he asked for an attorney but the officer ignored his request. He also said the officer informed him it would be better if he told the truth because Darnell had already revealed to the police what happened. Watkins conceded he signed the waiver which contained the statement, "I do not want a lawyer at this time." He said he continued to answer the officer's questions "to be polite" and because the officer kept "nagging" him.

The trial court held that Watkins's statements were given freely, voluntarily, and intelligently, without coercion, threat, or promise, and after he was properly advised of his rights. The November 28 statement about the Buchanan killing was then offered and admitted only in the penalty phase of Watkins's trial for the Barker murder. Defendant argues that this statement was not voluntary because he was entitled to stop the questioning at any time but the officer's persistence resulted in his being denied this right.

Admissibility of a defendant's statements is an issue to be decided by the court, which evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. *Stockton* v. *Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381, *cert. denied*, 105 S.Ct. 229 (1984); *Witt* v. *Commonwealth*, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975). The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. *Wyrick* v. *Fields*, 459 U.S. 42, 47 (1982); *Washington* v. *Commonwealth*, 228 Va. 535, 547-48, 323 S.E.2d 577, 586 (1984), *cert. denied*, 105 S.Ct. 2347 (1985); *Bunch* v. *Commonwealth*, 225 Va. 423, 433, 304 S.E.2d 271, 276, *cert. denied*, 464 U.S. 977 (1983). The court's determination is a question of fact based on the totality of the circumstances. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226 (1973); *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938); *Jones* v. *Commonwealth*, 228 Va. 427, 441, 323 S.E.2d 554, 561 (1984); *Washington*, 228 Va. at 547-48, 323 S.E.2d at 586; *Bunch*, 225 Va. at 433, 304 S.E.2d at 276. This factual finding will not be disturbed on appeal unless plainly wrong. *Jones*, 228 Va. at 441, 323 S.E.2d at 561; *Stockton*, 227 Va. at 140, 314 S.E.2d at 381.

The trial court was in a position to evaluate the credibility of the witnesses in accepting the testimony of the officer and rejecting the conflicting testimony of Watkins on the waiver question. The waiver signed by Watkins indicates he did not seek

counsel. Watkins himself testified that he understood his rights, that he could read well, and that he had previously been advised of his rights twice in unrelated matters and twice in the preceding week relative to the Barker and Buchanan murders. He admitted he knew he did not have to give a statement without a lawyer present but voluntarily gave the statement when he realized the officer would keep "nagging" him. We hold that the evidence in the record is sufficient to justify the factual determination by the trial court that Watkins's statement was voluntarily given. *See Bunch,* 225 Va. at 434, 304 S.E.2d at 277; *Clark* v. *Commonwealth,* 220 Va. 201, 208-09, 257 S.E.2d 784, 788-89 (1979), *cert. denied,* 444 U.S. 1049 (1980).

### 2. Other Pretrial Motions.

■ Watkins asked the court to appoint an investigator to assist in the preparation of his defense. The trial court denied the motion. We affirm this ruling. We have held that an indigent defendant has no constitutional right under the Due Process or Equal Protection clauses to appointment, at public expense, of a private investigator. *See Stockton,* 227 Va. at 140-41, 314 S.E.2d at 382; *Quintana* v. *Commonwealth,* 224 Va. 127, 135, 295 S.E.2d 643, 646 (1982), *cert. denied,* 460 U.S. 1029 (1983); *Martin* v. *Commonwealth,* 221 Va. 436, 446, 271 S.E.2d 123, 130 (1980).

Watkins contends, however, that failure to appoint an investigator to assist in his defense violated his Sixth Amendment rights. Citing no authority, he equates the advantage of having the assistance of an investigator to the right to compulsory process for obtaining witnesses and the right to assistance of counsel expressly guaranteed by the Sixth Amendment. The Sixth Amendment does not mandate appointment of an investigator, however, and we will not infer such a requirement from the clear language of the Amendment which outlines the constitutional prerequisites for criminal prosecutions. As the Supreme Court has stated in another context, "the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required." *Ross* v. *Moffitt,* 417 U.S. 600, 616 (1974).

■ Watkins also moved for discovery of the names and addresses of all potential witnesses for the Commonwealth. The motion was denied. Although Watkins conceded in pretrial argument on the motion that there is no existing authority requiring the

Commonwealth to provide this information, he contends that failure to allow such discovery violates the Sixth Amendment. He based his pretrial argument on the right to assistance of counsel; on appeal, he argued denial of the right to be confronted with the witnesses against him.

There is no constitutional right to discovery in a criminal case. *Weatherford* v. *Bursey*, 429 U.S. 545, 559 (1977). Nor does the prohibition of *Brady* v. *Maryland*, 373 U.S. 83 (1963), against concealing exculpatory evidence create a constitutional requirement that the prosecution furnish the names of its witnesses before trial. *Weatherford*, 439 U.S. at 559; *see Lowe* v. *Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), *cert. denied*, 435 U.S. 930 (1978) (Rule 3A:11, formerly Rule 3A:14, providing for discovery in criminal cases, does not require Commonwealth to provide names and addresses of witnesses). The trial court properly denied the discovery motion.

On the morning of trial, Watkins argued two motions relating to the selection of the jury. First, he sought to have separate juries impaneled for the guilt and sentencing phases. Second, he requested a new jury panel because the panel from which the jury would be drawn to hear the case had previously provided juries in two unrelated murder cases during the term. The court properly denied both motions.

Virginia's capital-murder statute expressly provides that the same jury shall decide the penalty after finding a defendant guilty of an offense punishable by death; a different jury is impaneled only if the sentence of death is later set aside or found invalid and resentencing is requested. Code § 19.2-264.3. Watkins contends that once a jury finds a man guilty of a capital offense, it is incapable of impartiality in fixing his punishment. This argument is untenable, however, in light of the sentencing statute, which has repeatedly withstood constitutional scrutiny. *See LeVasseur* v. *Commonwealth*, 225 Va. 564, 592-93, 304 S.E.2d 644, 659 (1983), *cert. denied*, 464 U.S. 1063 (1984); *Clark*, 220 Va. at 212-13, 257 S.E.2d at 791-92; *Smith* v. *Commonwealth*, 219 Va. 455, 476-78, 248 S.E.2d 135, 148-49 (1978), *cert. denied*, 441 U.S. 967 (1979).

Under § 19.2-264.4, the sentencing jury must consider, among other things, "the circumstances surrounding the offense." It is the jury's duty to consider all the evidence, both favorable and unfavorable, before fixing punishment. *Stamper* v. *Common-*

*wealth*, 220 Va. 260, 275-76, 257 S.E.2d 808, 819 (1979), *cert. denied*, 445 U.S. 972 (1980). Thus, even under the two-jury system Watkins seeks, the sentencing jury would necessarily have access to the evidence presented in the guilt phase of the trial. Such a system would give no greater assurance of impartiality than the system now used but it would needlessly require two separate trials in which the same evidence would be presented. This kind of cumbersome procedure is not mandated by the United States or Virginia constitutions. *See Jurek* v. *Texas*, 428 U.S. 262 (1976); *Gregg* v. *Georgia*, 428 U.S. 153 (1976) (upholding constitutionality of Texas and Georgia statutes which provide for bifurcated proceedings before the same jury on the issues of guilt and penalty).

Watkins next contends that voir dire was not an adequate means to insure a fair and impartial jury where some of the members of the venire had served on juries in other murder cases during the term. Voir dire examination revealed that 15 of the 20 jurors who qualified had previously served on juries, and several had served in a capital murder trial during the same term. Nevertheless, each juror affirmed that he or she could give Watkins a fair and impartial trial and base any verdict returned on the law and the evidence.

■ The partiality or impartiality of an individual juror is a factual issue best determined by the trial court. *Patton* v. *Yount*, 105 S.Ct. 2885, 2893 (1984). The court's finding that the jury impaneled was fair and impartial is entitled to great weight and should be set aside only for plain error. *See Hevener* v. *Commonwealth*, 189 Va. 802, 811, 54 S.E.2d 893, 898 (1949); *Slade* v. *Commonwealth*, 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931). The court does not abuse its discretion when it seats a juror whom voir dire shows to be impartial, regardless of the juror's prior jury service. *Slade*, 155 Va. at 1106, 156 S.E. at 391 (jurors not incompetent to try related cases involving different issues and law in the same term); *Burford* v. *Commonwealth*, 132 Va. 512, 516, 110 S.E. 428, 429 (1922) (jurors not disqualified because previously convicted same defendant of different offense). Since voir dire revealed no bias or prejudice among the jurors, including those who had heard other cases, the court did not abuse its discretion in qualifying each individual juror and in refusing Watkins's motion to summon an entirely new panel.

B.  Buchanan Murder.

1.  Motion to Suppress.

Watkins made a pretrial motion to suppress statements given by him to the police. We have affirmed the ruling of the trial court in the appeal of his Barker murder conviction that the statements were freely, voluntarily, and intelligently given, without coercion, threat, or promise, after Watkins was properly advised of his rights. The same rationale applies in this case. Moreover, the statements were never offered in evidence in either the guilt or penalty phases of the trial.

2.  Other Pretrial Motions.

Watkins moved the court for appointment of a private investigator at public expense to assist in his defense. The motion was denied. For reasons stated in the appeal of the Barker murder conviction, we affirm the ruling. *See Martin*, 221 Va. at 446, 271 S.E.2d at 130.

The trial court denied Watkins's motion for discovery of the names and addresses of all potential witnesses for the Commonwealth. For reasons stated in the appeal of the Barker murder conviction, we affirm the ruling. *See Lowe*, 218 Va. at 679, 239 S.E.2d at 118; Rule 3A:11.

Watkins moved for a change of venue pursuant to Code § 19.2-251 because of publicity generated by the trial of Watkins under the indictments arising from the Barker murder. Attached to the motion were five articles which had been published in the local newspapers. The trial court, in denying the motion, found that the articles were not inaccurate, prejudicial, inflammatory, or extensive. We affirm the ruling. Where a defendant relied on 70 articles in newspapers to support his motion for a change of venue but did not allege that the articles were either inaccurate or intemperate, we affirmed the trial court's denial of the motion. *Linwood Earl Briley* v. *Commonwealth*, 221 v. 532, 537, 273 S.E.2d 48, 51 (1980), *cert. denied*, 451 U.S. 1031 (1981).

A motion for a change of venue is addressed to the discretion of the trial judge. Absent an affirmative showing that there has been an abuse of discretion, we will not disturb the decision. *Tuggle* v. *Commonwealth*, 228 Va. 493, 503, 323 S.E.2d 539, 545 (1984), *vacated and remanded*, 105 S.Ct. 2315 (1985); *Washing-*

*ton,* 228 Va. at 544, 323 S.E.2d at 584; *Newcomer v. Commonwealth,* 220 Va. 64, 67, 255 S.E.2d 485, 487 (1979). There has been no such showing in this case.

The trial court experienced no difficulty in impaneling an impartial and qualified jury. Prospective jurors were extensively questioned by the court and by counsel on voir dire. Of the first 25 called, only five were removed for cause, one because of relationship to the defendant and four because of unalterable opposition to the death penalty, under *Witherspoon v. Illinois,* 391 U.S. 510, 522 (1968). The others were found to be qualified. We hold that the trial court was fully justified in deciding that it was not necessary to grant a change of venue in order to accord Watkins a fair trial.

## III. THE GUILT TRIAL.

### A. Barker Murder.

1. Admissibility of Photograph.

Watkins challenges the admission of a color photograph which depicted from close range the victim's face and a bloody gunshot wound. He asserts this photograph was unnecessary, immaterial, and inflammatory. The court held the photograph was admissible to prove the elements of the offense charged because it showed one of the wounds and the way the victim was found.

We have held repeatedly that admission of photographs is within the trial court's discretion, and the court's ruling will be disturbed only upon a showing of clear abuse of discretion. *See Poyner v. Commonwealth,* 229 Va. 401, 417, 329 S.E.2d 815, 827 (1985); *Jones,* 228 Va. at 450, 323 S.E.2d at 566-67; *Washington,* 228 Va. at 552, 323 S.E.2d at 588; *Stockton,* 227 Va. at 144, 314 S.E.2d at 384; *Bunch,* 225 Va. at 436-37, 304 S.E.2d at 278; *Peterson v. Commonwealth,* 225 Va. 289, 294, 302 S.E.2d 520, 524, *cert. denied,* 464 U.S. 865 (1983); *Martin,* 221 Va. at 447, 271 S.E.2d at 130. Having reviewed the photograph at issue, we find no abuse of discretion in its admission. The photograph tended to show premeditation and malice. *See Stockton,* 227 Va. at 144, 314 S.E.2d at 384.

2. Admissibility of Other Evidence.

■ Ellen Boaz, an employee of Kwik Stop, testified early in the trial. After she was excused, she sat in the courtroom and heard the testimony of other witnesses. The Commonwealth interrupted its questioning of the Kwik Stop manager to have Boaz excused from the courtroom so she later could be recalled. The Commonwealth then elicited from the manager that he had previously seen Watkins at the market. The Commonwealth recalled Boaz to ask if she had seen Watkins at the store on prior occasions. Watkins, objecting to the recall of Boaz, offered to stipulate that he had been in the Kwik Stop before November 13. Nevertheless, the court permitted the question to be asked, and Boaz answered in the affirmative.

Watkins argues the court erred in allowing Boaz's recall. We agree with the court's ruling that no harm resulted from recalling the witness since she had not heard testimony relevant to the question later asked of her and since Watkins conceded his presence at Kwik Stop at times prior to these offenses.

■ On direct examination of Kenny Fitzgerald, a participant in the November 13 card game, the Commonwealth elicited testimony that Fitzgerald gave Watkins $10 at Watkins's request. The Commonwealth's attorney then asked, "So he was broke?" Fitzgerald responded, "Yeah." Watkins objected to this question, but before the court ruled, the Commonwealth's attorney said, "Well, I'll ask him . . . do you know whether or not he had any money?" No additional objection was made, and Fitzgerald answered, "Well, I don't think he would have asked me for none, if he would have had some."

Watkins contends that the court erred in not ruling on his objection, thereby allowing the Commonwealth to ask leading questions of Fitzgerald and to comment on his testimony. We find no prejudicial error since the Commonwealth rephrased the question to eliminate its leading aspect in a manner apparently satisfactory to Watkins. Moreover, Nash subsequently testified that Watkins was "broke."

■ During cross-examination of Watkins, who testified in his own behalf, the Commonwealth attempted to impeach his testimony with a prior statement. Watkins objected to the questioning, which he alleged was argumentative, and asserted that the Commonwealth's attorney was "yelling" at him. The court ruled that the Commonwealth was entitled to cross-examine Watkins on this aspect of his testimony and allowed the questioning to proceed.

The conduct of the trial is committed to the discretion of the trial court. *Justus v. Commonwealth*, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981), *cert. denied*, 455 U.S. 983 (1982). Perceiving from the record no abuse of discretion, we will not disturb the court's ruling.

■ Watkins also argues that the court erred in allowing the Commonwealth's attorney to misstate his testimony that Nash had sold him the pistol. Following a defense objection to a question which began, "if you sold Quentin Nash that gun on the 17th," the Commonwealth's attorney rephrased his question and asked, "if Nash sold you the gun, did he sell you the empty cartridges, too?" The prosecutor's misstatement in the first question was obviously inadvertent and was promptly corrected, without prejudice to Watkins, by the question which followed.

■ On redirect examination of Nash, the Commonwealth was permitted to ask him if he was alone in the store during the commission of the offenses, to which Nash responded that he was not. Watkins contends this question exceeded the scope of cross-examination, which consisted of a single question as to the ownership of the pistol. While the question was outside the scope of cross-examination, any error in the admission of Nash's answer was harmless. Nash had previously testified in detail that Watkins was in the store when he entered and when he ran out with the cash drawer.

■ Watkins also argues the trial court improperly allowed the Commonwealth to question Nash about a statement Watkins allegedly made that he had robbed before. This evidence, however, was not presented until the sentencing phase of the trial, when it was admitted without objection.

3. Display of Bloody Rug.

■ Watkins objected to admission of the sweater the victim was wearing and the rug on which she was found. He argued that because both articles were bloody, the prejudice to Watkins would outweigh their probative value. The court ruled that both the sweater and the rug were admissible as physical evidence found at the crime scene. The rug was then displayed to the jury along with other items of physical evidence. When the Commonwealth introduced the physical evidence, however, the rug was not of-

fered, but Watkins continued his objection because it had been displayed.

On issues involving the admissibility of evidence, much must be left to the court's discretion. *See Stamper,* 220 Va. at 269-71, 257 S.E.2d at 815. Because the court properly ruled the rug admissible as physical evidence depicting the crime scene, we hold that no error resulted from its display to the jury even though it was not offered in evidence.

### 4. Sufficiency of Evidence.

■ Watkins challenges the sufficiency of the evidence to establish his guilt of the Barker murder. He argues that the evidence, based in large part on an accomplice's testimony, created only a suspicion of guilt. We disagree. The evidence was amply sufficient to create a jury issue. The testimony of Nash, the accomplice, was that Watkins entered the store with the intent to commit robbery and that he shot Barker in furtherance of that plan. The jury was the proper judge of Nash's credibility and the weight that should be given his testimony. *Johnson* v. *Commonwealth,* 224 Va. 525, 528, 298 S.E.2d 99, 101 (1982); *Coppola* v. *Commonwealth,* 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), *cert. denied,* 444 U.S. 1103 (1980). The court instructed the jury that it should use caution in basing a conviction on the uncorroborated testimony of the accomplice. *See Johnson,* 224 Va. at 527-28, 298 S.E.2d at 101.

■ Watkins also says the testimony of William E. Conrad, an expert in forensic science, was patently incredible so as to preclude submission of the case to the jury. Conrad stated that he was certain one of the bullets removed from the victim's body was fired from Watkins's pistol; he said there was "no margin of error." This positive statement merely affects the weight of his testimony; it does not necessarily invalidate or even weaken the results of his ballistics testing.

■ Finally, Watkins says he could not be convicted of murder in the commission of a robbery because he did not actually take the cash drawer. Rather, Nash testified that he took the drawer on Watkins's command. Under § 18.2-31, however, a defendant may be convicted of capital murder in the commission of a robbery without being a principal in the first degree to the crime of robbery. *James Dyral Briley* v. *Commonwealth,* 221 Va. 563, 573, 273 S.E.2d 57, 63 (1980). The Commonwealth need only

prove that the defendant actually committed the murder and was an accomplice in the robbery. *Id.* In this case, the Commonwealth met its burden. The court properly overruled Watkins's motion to strike the evidence, submitted the case to the jury, and overruled Watkins's motion to set aside the verdict.

### B. Buchanan Murder.

Sufficiency of Evidence.

Watkins raises similar arguments to challenge the sufficiency of the evidence to sustain his conviction for the murder of Buchanan. He argues the testimony of Darnell, an accomplice in the commission of the offenses, was suspect. As in the trial on the Barker offenses, the court gave the jury a cautionary instruction about relying on an accomplice's uncorroborated testimony. Darnell's testimony, if believed, was sufficient to convict. Additionally, Watkins's aunt confirmed portions of Darnell's testimony, stating that Watkins admitted to her that he killed Buchanan.

Watkins also challenges the credibility of Conrad, who again testified that he had no doubt that one of the bullets recovered from the victim's body was fired from Watkins's gun and that there was no possibility of mistake in his analysis. For reasons stated in the appeal of the Barker murder conviction, we hold the court properly submitted this case to the jury and properly refused to set aside the verdict.

Watkins reiterates his previous argument that he could not be convicted of murder in the commission of a robbery where he did not perpetrate the act of taking. This argument is not only meritless, for reasons stated in the appeal of the Barker murder conviction, but is inapplicable in the Buchanan case, as the Commonwealth's evidence showed that it was Watkins who actually removed the cash drawer and took Buchanan's wallet.

### IV. THE PENALTY TRIAL.

### A. Barker Murder.

1. Admissibility of Evidence of Buchanan Murder and Sufficiency of Evidence of Dangerousness.

During the sentencing phase of the Barker murder trial, the Commonwealth introduced detailed evidence of the Buchanan

murder, for which Watkins had yet to be tried and convicted. The evidence included testimony of the Fast Fare manager, the medical examiner, the forensic scientist, and four law enforcement officers, all of whom later testified in Watkins's trial for the Buchanan murder. The Commonwealth introduced Watkins's statement of November 28 and photographs of the store and the second victim's body. Moveover, Nash testified without objection that, as he and Watkins proceeded to the Kwik Stop, Watkins assured him that there was "nothing to" the proposed robbery, that Watkins with others had committed robbery before. There was no evidence that Watkins had been charged or convicted of an earlier robbery.

Watkins contends that admission of evidence of the second murder in the first trial violated his presumption of innocence of the second offense; he says he was, in effect, tried and convicted of the Buchanan murder in the sentencing phase of the Barker murder trial. He also argues that use of evidence of unadjudicated criminal activity is restricted by statute. *See* Code § 19.2-264.2.

Code § 19.2-264.2 provides that a jury may impose a sentence of death upon finding that the defendant poses a continuing serious threat to society after considering his prior "criminal record of convictions." Under Code § 19.2-264.4, however, the Commonwealth is expressly authorized to introduce "evidence of the prior history of the defendant" to establish his future dangerousness. In *LeVasseur*, we resolved any conflict in the statutory terminology and held that the difference in the language of the two provisions did not render the capital-murder sentencing scheme unconstitutionally vague. 225 Va. at 593-94, 304 S.E.2d at 660. We noted that, in determining the probability of a defendant's future criminal conduct, it is "essential . . . that the jury have before it *all possible relevant information* about the individual defendant whose fate it must determine." *Id.* at 594, 304 S.E.2d at 660, quoting *Jurek* v. *Texas*, 428 U.S. 262, 275-76 (1976) (emphasis added in *LeVasseur*).

Admissible evidence in the sentencing phase is not limited to the defendant's record of convictions. *Peterson*, 225 Va. at 298, 302 S.E.2d at 526. We have repeatedly approved the use of testimonial evidence relating to a defendant's commission of other crimes of which he has been convicted. *See Coleman* v. *Commonwealth*, 226 Va. 31, 43-44, 307 S.E.2d 864, 870-71 (1983), *cert. denied*, 465 U.S. 1109 (1984); *Peterson*, 225 Va. at 298, 302

S.E.2d at 526; *Quintana*, 224 Va. at 147-48, 295 S.E.2d at 653-54; *Stamper*, 220 Va. at 275-77, 257 S.E.2d at 819-20. In *Stamper* we said, "In determining his proclivity for violence, the jury may obtain from the mere record of previous convictions an inaccurate or incomplete impression of the defendant's temperament and disposition." 220 Va. at 276, 257 S.E.2d at 819.

We have also held to be admissible in the sentencing phase evidence of other crimes for which a defendant has not been convicted. *See Poyner*, 229 Va. at 418, 329 S.E.2d at 827; *Stockton*, 227 Va. at 147, 314 S.E.2d at 385. In *Poyner*, the Commonwealth was permitted to introduce the defendant's videotaped confession to five murders in the sentencing phases of three capital-murder trials (Williamsburg and Newport News cases), although he had not yet been tried and convicted of all five offenses. 229 Va. at 418, 434, 329 S.E.2d at 828, 837. The confession was deemed "highly reliable and wholly relevant to the issue of future dangerousness." 229 Va. at 418, 329 S.E.2d at 828. The Commonwealth also was permitted to introduce the testimony of the victim of assault and battery, although there was no evidence that Poyner was tried or convicted of the offense which she described. 229 Va. at 428, 329 S.E.2d at 833.

In *Stockton*, a witness had testified to Stockton's murder of a second victim. That evidence, admissible in the guilt phase because the two offenses were interrelated and because the second murder demonstrated Stockton's guilty knowledge of the first and his attempt to conceal his guilt, we also deemed relevant to establish the defendant's propensity for future crimes of violence. 227 Va. at 143, 147, 314 S.E.2d at 383, 385.

Adhering to these rulings, we hold that evidence of prior unadjudicated criminal conduct, while generally not admissible in the guilt phase of a capital-murder trial, may be used in the penalty phase to prove the defendant's propensity to commit criminal acts of violence in the future. *See Clines* v. *State*, 280 Ark. 77, 91-92, 656 S.W.2d 684, 690 (1983), *cert. denied*, 465 U.S. 1051 (1984); *State* v. *Rault*, 445 So.2d 1203, 1214-15 (La.), *cert. denied*, 104 S.Ct. 1328 (1984); *Williams* v. *State*, 668 S.W.2d 692, 694 (Tex. Crim. App. 1983) (evidence of unadjudicated criminal activity admitted in sentencing phase of capital-murder proceedings). Here, in his statement introduced in evidence, Watkins claimed he shot Buchanan, an unarmed man who he thought was reaching for a weapon, four times in self-defense. The jury

could find this explanation incredible. The evidence of Watkins's involvement in the Buchanan murder and commission of an earlier robbery, together with his prior convictions for assault and battery and possession of a concealed weapon, was sufficient to support a jury finding of his future dangerousness.

2. Sufficiency of Evidence of Vileness.

Watkins argues that the evidence was insufficient to establish vileness and the court therefore erred in instructing the jury on this aggravating circumstance. Even if the evidence were insufficient to sustain a finding of vileness, the imposition of the death sentence in this case would nonetheless be proper because the jury found, on sufficient evidence, that Watkins is likely to constitute a continuing serious threat to society. *Zant* v. *Stephens*, 462 U.S. 862, 881 (1983). We hold, however, that the evidence was sufficient to establish vileness.

So far as is pertinent here, Code § 19.2-264.2 authorizes imposition of a death sentence if the jury finds that the defendant's conduct "was outrageously or wantonly vile, horrible or inhuman in that it involved . . . an aggravated battery." The court's instruction permitted the jury to find that Watkins's conduct constituted vileness in that it involved an aggravated battery. The question is whether there was sufficient evidence to support the instruction and the jury's finding of an aggravated battery, defined as one "which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder." *Smith*, 219 Va. at 478, 248 S.E.2d at 149; *see also Edmonds* v. *Commonwealth*, 229 Va. 303, 313, 329 S.E.2d 807, 814 (1985); *Turner* v. *Commonwealth*, 221 Va. 513, 527, 273 S.E.2d 36, 45 (1980), *cert. denied*, 451 U.S. 1011 (1981); *Clark*, 220 Va. at 211, 257 S.E.2d at 790.

The evidence established that Watkins fired four shots at Barker, inflicting one facial and two chest wounds. He first fired two shots across the store counter and she fell to the floor. After Nash fled with the cash drawer, Watkins leaned across the counter and fired two more shots.

An aggravated battery is not proven where the evidence shows that the victim died almost instantaneously from a single gunshot wound. *Godfrey* v. *Georgia*, 446 U.S. 420 (1980); *Peterson*, 225 Va. at 296, 302 S.E.2d at 525. However, proof of infliction of

multiple wounds may meet the test for an aggravated battery. *See Boggs* v. *Commonwealth*, 229 Va. 501, 521, 331 S.E.2d 407, 421 (1985) (this day decided); *Edmonds*, 229 Va. at 814, 329 S.E.2d at 814. In this case, Watkins exceeded the quality and quantity of force necessary to accomplish Barker's murder. The shots were separated by a lapse of time, during which Nash first refused and then obeyed Watkins's order to take the cash drawer to the car. Death was not instantaneous. We hold that this evidence is sufficient to sustain the court's giving of an instruction on vileness based on aggravated battery and the jury's finding under the instruction. *See Turner*, 221 Va. at 518, 527, 273 S.E.2d at 39, 45 (aggravated battery established by evidence that defendant shot store owner in head and, after lapse of time during which two occupants fled and police officer urged defendant not to shoot again, inflicted fatal chest wounds because owner had previously triggered an alarm).

3. Constitutionality of Sentencing Statutes and Form Verdict.

Watkins reiterates arguments previously made in capital cases that Code §§ 19.2-264.2 and -264.4 are unconstitutional. Having repeatedly upheld the constitutionality of these provisions, we adhere to our prior rulings. *See, e.g., LeVasseur*, 225 Va. at 592-94, 304 S.E.2d at 659-60 (statutes facially constitutional and not vague); *Whitley* v. *Commonwealth*, 223 Va. 66, 77-78, 286. S.E.2d 162, 168-69, *cert. denied*, 459 U.S. 882 (1982) (death penalty not cruel and unusual punishment and not arbitrarily and capriciously imposed); *James Dyral Briley*, 221 Va. at 577-80, 273 S.E.2d at 65-67 (sentencing statutes not overbroad or vague); *Clark*, 220 Va. at 212, 257 S.E.2d at 791 (death penalty imposed for appropriate crimes under objective standards); *Smith*, 219 Va. at 476-78, 248 S.E.2d at 148-49 (death penalty not cruel and unusual punishment, jury not vested with standardless discretion, and statutes not void for vagueness).

Watkins also contends that the statutory verdict form is unconstitutional because it places undue emphasis on the aggravating circumstances of future dangerousness and vileness without similarly emphasizing the jury's duty to consider mitigating factors. He also challenges the form verdict because it fails to state the standard of proof for mitigation. States are not constitutionally required "to adopt specific standards for instructing the jury

in its consideration of aggravating and mitigating circumstances."
*Zant*, 462 U.S. at 890. The jury is instructed to consider mitigating circumstances, and the form verdict reflects that a jury may sentence a defendant to death only after "having considered the evidence in mitigation of the offense." Code § 19.2-264.4. These safeguards sufficiently satisfy the constitutional requirement that the jury's discretion be "guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." *Proffitt* v. *Florida*, 428 U.S. 242, 258 (1976).

Listing of aggravating factors in the form verdict without a comparable listing of mitigating factors benefits rather than prejudices the accused. *Clark*, 220 Va. at 212, 257 S.E.2d at 791. Aggravating factors are expressly limited to those specified by statute, while any circumstances in mitigation may be considered. *Id.*; *see Smith*, 219 Va. at 479, 248 S.E.2d at 149. Hence, the form verdict, which follows the language of the statute, is constitutional.

4. Propriety of Trial Court's Sentence.

■ The trial court received a post-sentence report as mandated by Code § 19.2-264.5. After conducting a sentencing hearing at which Watkins offered no additional evidence, the court imposed the death sentence in accordance with the jury's verdict. Watkins argues that his age, 22 years, and his lack of a "significant" prior criminal record required the court to impose a life sentence. We do not agree. Under § 19.2-264.5, the court may set aside the death sentence "upon good cause shown," and the trial court could reasonably conclude from the evidence that good cause had not been shown.

Watkins's age did not *per se* preclude imposition of the death penalty; it was merely a factor to be considered by the jury. *Peterson*, 225 Va. at 300, 302 S.E.2d at 527. Watkins's criminal history, as revealed by the post-sentence report, included, in addition to the assault and possession convictions in evidence at the sentencing phase, one larceny and two shoplifting convictions and a charge of robbery which was dismissed.

■ Watkins contends on brief that the sentence of death was racially motivated because he is black but the victim and all the

jurors were white. A black defendant is not constitutionally entitled to a jury containing members of his own race. *Swain* v. *Alabama*, 380 U.S. 202, 203 (1965); *Brown* v. *Commonwealth*, 212 Va. 515, 516, 184 S.E.2d 786, 787 (1971), *vacated in part*, 408 U.S. 940 (1972); *see Turner*, 221 Va. at 523, 273 S.E.2d at 42. In order to establish a violation of the Equal Protection Clause, he must demonstrate purposeful or deliberate exclusion of blacks from jury service on the basis of race. Such discrimination "may not be assumed or merely asserted" but must be proven. *Swain*, 380 U.S. at 203-09.

Watkins has presented no evidence that the jury selection procedures in this case departed from the random selection procedures mandated by statute. *See* Code §§ 19.2-260, 8.01-343 to -363. He merely relies on his allegation that the jury was entirely white in composition. His bare assertion of racial motivation is insufficient to establish systematic exclusion of blacks from membership on juries. He did not challenge the racial composition of the jury at trial, and nothing in the record suggests that his sentence resulted from racial prejudice.

█ Watkins also argues that the closing argument of the Commonwealth's attorney was improper because it appealed to the jury's passions. This objection was not raised at trial, and we will not notice it for the first time on appeal. Rule 5:21.

Before sentencing Watkins to death, the judge said, "I have reflected upon the evidence which was presented. . . . After considering all these matters, the Court is of the opinion that the verdict of the jury is both appropriate and just . . . . " We hold that the court did not abuse its discretion in imposing the death sentence.

## B.  Buchanan Murder.

### 1.  Sufficiency of Evidence of Vileness.

█ Watkins challenges the sufficiency of the evidence to support an instruction and a jury finding on the existence of vileness. The evidence established that Watkins fired four shots at Buchanan, resulting in wounds to the head, chest, and back. He fired two shots, after which Buchanan fell backward. Watkins then went around the counter, removed the cash drawer, disappeared from sight behind the counter, and fired two additional shots. He returned to the car with the cash drawer and Buchanan's wallet. Medical evidence established that the two

chest injuries caused Buchanan's death and that either of these wounds independently would have been fatal.

As in the Barker killing, Watkins's conduct exceeded that necessary to accomplish the murder. Again, he allowed an appreciable lapse of time between shots, during which he removed the drawer and wallet. Again, the victim's death was not shown to be instantaneous. As in the Barker case, the court instructed the jury that it could find vileness based on conduct which involved an aggravated battery. For reasons stated in the appeal of the Barker murder conviction, we hold the evidence sufficient to support the court's instruction on vileness and the jury's verdict.

2. Constitutionality of Sentencing Statutes and Form Verdict.

Watkins restates the arguments raised in the Barker appeal that Code §§ 19.2-264.2 and -264.4 and the form verdict provided in § 19.2-264.4 are unconstitutional. For reasons stated in that appeal, we affirm the constitutionality of these statutory provisions.

3. Propriety of Trial Court's Sentence.

Watkins contends, as he did in the Barker appeal, that the trial court disregarded the evidence of mitigating factors and imposed the death sentence under the influence of passion, prejudice, or other arbitrary factors. He specifically notes, in addition to his age and criminal record, his limited education, low average intelligence, and history of episodic substance abuse. Each of these factors was shown by the evidence during the sentencing phase or was reflected by the post-sentence report. Following a sentencing hearing, at which Watkins offered no additional evidence, the court imposed the death sentence in accordance with the jury's verdict, noting Watkins's earlier conviction for capital murder. There is no evidence that the court refused to consider the mitigating circumstances, and we hold that the court did not abuse its discretion in imposing the death sentence.

Watkins also reiterates his charge that the jury sentenced him to death as a result of racial prejudice and that the Commonwealth's attorney used improper argument. For reasons stated in the Barker appeal we reject these contentions.

V. Sentence Review — Both Cases.

Pursuant to Code § 17-110.1, we are required to consider and determine whether the death sentences in these cases were imposed under the influence of passion, prejudice, or other arbitrary factors. We have rejected in each appeal Watkins's contentions that there were failures to consider mitigating factors, racial bias, and improper prosecutorial argument. A thorough review of the record in each case reveals nothing to suggest that either death sentence was imposed under the influence of passion, prejudice, or other arbitrary factors.

We are also required to determine whether the death sentences in these cases are excessive or disproportionate to the sentences imposed in similar cases. Comparing the cases with other capital murder cases reviewed by this Court, we have given particular emphasis to cases in which the death sentence was based on both the defendant's future dangerousness and the vileness of the crime.[2] We have also considered the records of all capital cases reviewed by this Court under the present statutes in which life sentences were imposed. It is clear from this review that the sentences of death for the Barker and Buchanan murders are not excessive or disproportionate to sentences generally imposed for similar crimes throughout the Commonwealth.

Of particular interest in this comparison is *Turner*, in which we upheld a death sentence based on both the future dangerousness

---

[2] Cases based on both predicates are compiled in *Tuggle*, 228 Va. at 517, 323 S.E.2d at 554. Cases relying on both future dangerousness and vileness to support the death penalty, not included in that list, are *Tuggle* v. *Commonwealth*, 228 Va. 493, 323 S.E.2d 539 (1984), *vacated and remanded*, 105 S.Ct. 2315 (1985), *Edmonds* v. *Commonwealth*, 229 Va. 303, 329 S.E.2d 807 (1985), and *Poyner* v. *Commonwealth*, 229 Va. 401, 329 S.E.2d 815 (1985).

Cases in which vileness alone formed the basis for imposition of the death penalty are collected in *Jones*, 228 Va. at 450-51 n.3, 323 S.E.2d at 567 n.3. Subsequent cases relying only on vileness are *Jones* v. *Commonwealth*, 228 Va. 427, 323 S.E.2d 554 (1984), *Washington* v. *Commonwealth*, 228 Va. 535, 323 S.E.2d 577 (1984), *cert. denied*, 105 S.Ct. 2347 (1985), and *Boggs* v. *Commonwealth*, 229 Va. 501, 331 S.E.2d 407 (1985) (this day decided).

Dangerousness was the basis for the death sentence in the following cases: *Evans* v. *Commonwealth*, 228 Va. 468, 323 S.E.2d 114 (1984) (affirming imposition of death penalty upon resentencing after prior sentence, which had been upheld in 222 Va. 766, 284 S.E.2d 816 (1981), *cert. denied*, 455 U.S. 1038 (1982), was vacated by trial court); *Peterson* v. *Commonwealth*, 225 Va. 289, 302 S.E.2d 520, *cert. denied*, 464 U.S. 865 (1983); *Bassett* v. *Commonwealth*, 222 Va. 844, 284 S.E.2d 844 (1981), *cert. denied*, 456 U.S. 938 (1982); *Giarrantano* v. *Commonwealth*, 220 Va. 1064, 266 S.E.2d 94 (1980).

of the defendant and the vileness of the crime. 221 Va. at 530-31, 273 S.E.2d at 47. The facts in *Turner* are substantially similar to those in the Barker and Buchanan murders for purposes of this review. We hold that the sentences imposed in these two cases are not excessive or disproportionate when compared with *Turner* and other cases. Moreover, the sentences are not excessive or disproportionate when compared with each other. In these cases, which are factually indistinguishable, two distinct juries reviewed the evidence and reached the same result, finding that the aggravating circumstances of future dangerousness and vileness warranted imposition of the death penalty.

Finding no reversible error in the trial of these cases and determining that the death sentences are properly imposed, we will affirm the judgments of the trial court in both cases.

*Record No. 841551 - Affirmed.*
*Record No. 841913 - Affirmed.*