COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Powell and Alston
Argued at Chesapeake, Virginia


VINCENT EDWARD BATTIN

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 0765-09-1          CHIEF JUDGE WALTER S. FELTON, JR.
                                                MARCH 30, 2010
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Norman A. Thomas, Judge[1]

          B. Thomas Reed for appellant.

          Gregory W. Franklin, Assistant Attorney General (William C. Mims,
          Attorney General, on brief), for appellee.


       Vincent Edward Battin ("appellant") was convicted in a bench trial by the Circuit Court of

the City of Norfolk ("trial court") of robbery, conspiracy to commit robbery, and the use of a

firearm in the commission of robbery.  On appeal, appellant contends that (1) the trial court erred in

refusing to suppress the statement he made to Norfolk City police detectives and (2) the trial court

erred in finding the Commonwealth's evidence sufficient to convict him of robbery under Code

§ 18.2-58.  For the following reasons we affirm the judgment of the trial court.

                                   BACKGROUND

       On July 30, 2006, in the City of Norfolk, Clarence McCary ("McCary") and his girlfriend,

Lorietta, argued about McCary not having any money.  Thereafter, appellant and McCary discussed

_____

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

          [1] Judge Alfred M. Tripp presided over the suppression hearing and subsequently retired
from the bench prior to ruling on appellant's motion to suppress.  Thereafter, Judge Thomas was
assigned to the case and entered the order denying appellant's motion to suppress.

McCary's plan to rob someone.[2]  Appellant then drove McCary from Norfolk to Chesapeake where McCary purchased a gun from appellant's friend.  When the two men returned to Norfolk, McCary told appellant he was going to rob an "old man" in a Mercedes.  Appellant asked "why you going to rob an old man for[?]"  McCary then told appellant he was going to rob the owner of a nearby laundromat because he "had money in there."  Appellant, after first saying he "ain't got nothing to do with it," then said "all right" and gave McCary "some dap."[3]  Thereafter, McCary robbed the laundromat owner, Frederico Mauricio, at gunpoint.

After the robbery, McCary returned to Lorietta's apartment "pulling money out of his pockets" and told appellant that he had robbed the man at the laundromat.[4]  Later, when appellant and McCary left the apartment, they encountered police officers investigating the robbery.  When asked if they saw anyone matching the description given by Mauricio, they denied seeing anyone.  Appellant then drove McCary out of the area.

On August 23, 2006, some three weeks after the robbery, appellant surrendered to the Norfolk Police Department on outstanding warrants relating to the robbery.  Attorney Benjamin Hamlett accompanied appellant.  Following his arrest for the robbery, and after having been advised of his Miranda[5] rights, appellant told Detective Hines where McCary could be located.  After that initial discussion, Hamlett left.  Detective Hines overheard Hamlett tell appellant "to

---

[2] Appellant was on bond following his arrest for possession with intent to distribute cocaine in Virginia Beach.

[3] Appellant explained at trial that giving "dap" meant he shook McCary's hand.

[4] Contrary to what he told the police, appellant testified at trial that he did not "know [McCary] [had] robbed anybody until the police came to [his] car door."  He later testified that he did not learn McCary had robbed the laundromat until two hours later.

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

not make any further statements to [the officers] after he left." Appellant remained in the interview room, and the officers left to locate McCary.

Approximately two hours later, Detectives Hines and Fularon returned to the Police Operation Center. They decided to get something to eat, and asked appellant if he wanted them to bring him anything. Appellant told them what he wanted to eat, and then told Detective Hines, "I just want to get things right with you guys and get things right with God. I just want to tell you the truth." Detective Hines responded, "okay," and left to pick up the food order. Later, after appellant finished eating, he asked Detectives Hines and Fularon to talk to him. Pursuant to appellant's request, they re-entered the interview room. The officers had a brief, unrecorded conversation with appellant. During a later tape-recorded interview, appellant told the officers about McCary's argument with his girlfriend, how he drove McCary to obtain a gun, and the events leading up to and following the robbery of Mauricio.

### I. Motion to Suppress

> On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and at trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view it in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible therefrom, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Dodd v. Commonwealth, 50 Va. App. 301, 306, 649 S.E.2d 222, 224 (2007). We review the trial court's findings of historical fact only for clear error. Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996). However, we review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Ornelas v. United States, 517 U.S. 690, 697 (1996).

Appellant contends the trial court erred by denying his motion to suppress his statement, arguing that he was wrongfully held for six hours, that the officers wrongfully reinitiated contact with him, and that the officers were aware his attorney advised him not to speak with them.

"Absent a knowing and intelligent waiver of the Fifth Amendment right against self-incrimination and the Sixth Amendment right to the assistance of legal counsel, a confession made by a suspect during in-custody interrogation is inadmissible in evidence against him." Harrison v. Commonwealth, 244 Va. 576, 580, 423 S.E.2d 160, 162 (1992). "[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Id. at 581, 423 S.E.2d at 163.

> "[The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances. This factual finding will not be disturbed on appeal unless plainly wrong."

Id. (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985)). A waiver is knowing and intelligent when made "'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Rodriguez v. Commonwealth, 40 Va. App. 144, 156-57, 578 S.E.2d 78, 83 (2003) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

When appellant arrived at the Police Operation Center with attorney Hamlett, the two men were taken to an interview room with Detectives Hines and Fularon. Appellant, while his attorney was present, was arrested and advised of his Miranda rights. He was presented with a "Norfolk Police Department PD form 381 legal rights advice form." The form contained the Miranda warnings and the following three statements:

(5)     The above rights have been fully explained to me, and I
        sign this paper with complete understanding of them.

(6)     I further state that *I waive these rights and desire to make a
        statement.*

(7)     This statement is completely free and voluntary on my part
        without any threat or promise from anyone.

(Emphasis added).  Appellant was asked to read each line of the form as his rights were explained

to him.  He initialed each condition and signed the form.  At trial appellant stipulated that he

"made a voluntarily [sic] intelligent waiver of his right to remain silent and his right to consult

with an attorney."

Appellant argues on appeal that the officers wrongfully reinitiated contact with him after

his lawyer left, and after they heard his lawyer tell him not to say anything else to the officers.  It

is clear that "[o]nly if the accused initiates further 'communication, exchanges, or conversations

with the police,' and only if those communications result in the accused changing his or her mind

and freely and voluntarily waiving the right to counsel, may the police resume interrogation

without violating the Edwards rule."[6]  Ferguson v. Commonwealth, 52 Va. App. 324, 335, 663

S.E.2d 505, 510 (2008) (quoting Arizona v. Roberson, 486 U.S. 675, 682 (1988)), aff'd, 278 Va.

118, 677 S.E.2d 45 (2009).  Here, appellant executed a written waiver of rights form in the

presence of the attorney who accompanied him to the Police Operation Center.  There is no

evidence in the record that appellant ever sought to withdraw the written waiver of rights form he

executed.

After the attorney left the Police Operation Center, appellant did not at any time request

the presence of an attorney and never told the officers he did not want to talk to them without an

---

[6] Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) ("an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police").

attorney present. See Harrison, 244 Va. at 581, 423 S.E.2d at 163. During the suppression hearing on August 15, 2007, appellant admitted that he was a twice-convicted felon and was familiar with his Miranda rights, including his right to have counsel present for questioning. He simply chose to ignore the parting advice of his attorney not to make any more statements to the officers.

Appellant reinitiated contact with the officers by spontaneously stating to them, "I just want to get things right with you guys and get things right with God. I just want to tell you the truth." During the suppression hearing, appellant conceded that he made these statements to the officers, but claimed the officers repeatedly badgered him so he "made up the little story."[7] He admitted that his entire transcribed statement was a "complete lie."[8] The only evidence in the record of police badgering is appellant's testimony. As fact finder, the trial court was entitled to disbelieve appellant's self-serving testimony. Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004); Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001); Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Moreover, appellant admitted at trial that he changed his "story" multiple times. After having his rights read to him, including his right to remain silent, and his right to have his attorney present during any police questioning, appellant waived his rights and reinitiated contact with the detectives, against the advice of counsel, in order "to get things right with you guys and . . . with

---

[7] Appellant claimed at the suppression hearing that Detective Lovely took part in badgering him, however Detective Lovely testified at trial that he never spoke with appellant about the robbery at that time because he had been dispatched to a homicide investigation.

[8] At trial on December 29, 2008, appellant testified that he gave the statement because his "daughter was about to be born" and the officers told him they would get him a bond if he told them what they wanted to hear. When questioned by the trial court, appellant admitted that his child was born on January 2, 2007, over four months after he arrived at the police station in August 2006.

God." Accordingly, we conclude that the trial court did not err in denying appellant's motion to suppress his statement.

## II. Sufficiency

Appellant argues that the evidence was insufficient to prove he was guilty of the robbery of Mauricio in the laundromat.

> "Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden, 275 Va. at 148, 654 S.E.2d at 586.

Smallwood v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009).

"In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18. "To be guilty of accessory before the fact, the accused must either know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime." McGhee v. Commonwealth, 221 Va. 422, 427, 270 S.E.2d 729, 732 (1980). See McMorris v. Commonwealth, 276 Va. 500, 505-06, 666 S.E.2d 348, 350-51 (2008). See also Pleasant v. State, 701 So. 2d 799 (Miss. 1997) (finding defendant guilty of robbery where defendant provided gun to actual robber); Commonwealth v. Balakin, 254 N.E.2d 422 (Mass. 1969) (finding defendant guilty of robbery where he provided suggestions, guns, and vehicles to actual robbers).

The evidence presented at trial clearly supports appellant's conviction as an accomplice to McCary's robbery of Mauricio at the laundromat. Appellant knew McCary was desperate to get

money to support his girlfriend. McCary discussed his plans to rob someone with appellant. Appellant drove McCary to obtain a gun from appellant's friend, knowing McCary's intended purpose for the gun. After the two returned to Norfolk, McCary suggested robbing an "old man" in a Mercedes. Appellant told him to find someone else. When McCary decided to rob the laundromat owner, because he had money, appellant said "all right" and gave McCary "dap." After the robbery, McCary returned to his girlfriend's apartment, pulling money out of his pockets in appellant's presence. Appellant then drove McCary away from the area of the robbery.

Appellant's testimony at trial was disjointed and inconsistent with the statement he gave to the police. The trial court was entitled to disbelieve appellant's testimony and find that he encouraged McCary to commit a robbery by helping him obtain a gun and by offering advice on McCary's suggested victims. Duncan, 267 Va. at 385, 593 S.E.2d at 215; Shackleford, 262 Va. at 209, 547 S.E.2d at 907; Marable, 27 Va. App. at 509-10, 500 S.E.2d at 235. Accordingly, we cannot say that the trial court was plainly wrong in finding the evidence sufficient to convict appellant of conspiracy, robbery, and use of a firearm in the commission of robbery.

CONCLUSION

We affirm the judgment of the trial court denying appellant's motion to suppress and finding appellant guilty of robbery, conspiracy, and the use of a firearm in the commission of robbery.

Affirmed.