No. 89–5148. WATKINS *v.* MURRAY, DIRECTOR, VIRGINIA DEPARTMENT OF CORRECTIONS. Sup. Ct. Va. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth

---

and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition for certiorari and vacate the death penalty in this case. Even if I did not take this view, I would grant the petition to decide whether a court's failure either to inform a capital sentencing jury that it must consider mitigating evidence or to explain the concept of mitigation undermines a capital defendant's right to have the jury "consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." *Penry* v. *Lynaugh*, 492 U. S. 302, 328 (1989). The judge's failure in this case to instruct the juries on the role of mitigating evidence created a substantial risk that the juries did not conduct their sentencing tasks properly. I therefore would vacate petitioner's death sentences and remand for new sentencing.

Petitioner Johnny Watkins was convicted of murder in two separate proceedings and sentenced to death for both crimes. The same judge presided at both trials. At the sentencing phase of each trial, petitioner's counsel introduced mitigating evidence concerning Watkins' character and urged the jury to consider those factors that called for mercy. The judge's instructions in each case stated that the prosecution had to prove beyond a reasonable doubt at least one of two aggravating circumstances:

> "(1) That, after consideration of the circumstances surrounding this offense or the prior history and background of the defendant, there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society; or
>
> "(2) That the defendant's conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved an aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder." App. F to Pet. for Cert.

The instructions stated that each jury could sentence Watkins to death if it found that the State had proved the existence of one of the aggravating circumstances beyond a reasonable doubt; alternatively, the jury could choose the punishment of life imprisonment if it believed "from all the evidence that the death penalty is not justified." *Ibid.* The instructions did not mention "mitigating evidence" or any equivalent concept. The judge also read the

verdict form to the jury in each case. That form required the jury to certify that, in reaching its verdict, it had "considered evidence in mitigation of the offense." *Ibid.* The form offered no explanation of "evidence in mitigation."

Petitioner's objections to the instructions were overruled in both cases. On direct appeal, the Virginia Supreme Court rejected his contention that the instructions had overemphasized the jury's duty to consider aggravating circumstances and underemphasized its duty to consider mitigating factors. The court held that the instructions and verdict form sufficiently guided the jury's consideration and ensured that the jury had considered mitigating factors. On state habeas, the Circuit Court held, tersely, that "the jury was properly instructed as to all matters and findings that they were required to make, including but not limited to evidence in mitigation of punishment." App. D to Pet. for Cert. The State Supreme Court, without addressing petitioner's challenge to the instructions, refused to hear his appeal.

Two central principles pervade this Court's capital punishment jurisprudence. First, "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Skipper* v. *South Carolina,* 476 U. S. 1, 4 (1986) (quoting *Eddings* v. *Oklahoma,* 455 U. S. 104, 114 (1982)). Second, the sentencer's discretion "must be guided appropriately by objective standards," *Mills* v. *Maryland,* 486 U. S. 367, 374 (1988), "so as to minimize the risk of wholly arbitrary and capricious action," *Gregg* v. *Georgia,* 428 U. S. 153, 189 (1976) (joint opinion). Although these two principles may at times come into "tension," *California* v. *Brown,* 479 U. S. 538, 544 (1987) (O'CONNOR, J., concurring), this case presents a situation in which both principles demand the vacation of petitioner's death sentences.

The Constitution does not require a specific set of instructions on mitigating circumstances. See *Zant* v. *Stephens,* 462 U. S. 862, 890 (1983). Nonetheless, "the jury instructions—taken as a whole—must clearly inform the jury that they are to consider any relevant mitigating evidence." *Brown, supra,* at 545 (O'CONNOR, J., concurring). The instructions in this case—that the juries could sentence petitioner to life if they believed from "all the evidence" that the death penalty was not justified—were simply insufficient to inform the juries of their duty to consider factors in mitigation. Nor did the verdict form correct this error, as it merely stated in boilerplate language that the juries had "consid-

ered evidence in mitigation of the offense." Although the instructions did not *preclude* consideration of relevant mitigating evidence, neither did they "clearly inform" the juries that they were required to consider such evidence. This situation creates an unacceptable risk that the juries did not consider "'factors which may call for a less severe penalty.'" See *Penry, supra,* at 328. Petitioner's case must accordingly be remanded for resentencing.

Even if the juries were aware of their obligation to consider mitigating evidence, the instructions provided absolutely no guidance on what constitutes relevant mitigating evidence or how the juries should have considered such evidence. "Mitigating evidence" is a term of art, with a constitutional meaning that is unlikely to be apparent to a lay jury. See *Franklin* v. *Lynaugh,* 487 U. S. 164, 188 (1988) (O'CONNOR, J., concurring in judgment) ("We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death"). If it is possible for judges to misconstrue the term and exclude relevant mitigating evidence, see *Eddings* v. *Oklahoma, supra,* at 113–114, it seems probable that a jury operating without adequate guidance could do the same. The imposition of the death penalty should not be contingent on a particular jury's unguided understanding of a legal term of art. When a trial court refuses to give content to the words on which a defendant's life depends, the subsequent sentence is arbitrary and capricious. I therefore dissent.