998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Johnny WATKINS, Jr., Petitioner-Appellant,
v.
Edward W. MURRAY, Respondent-Appellee.
 No. 92-4010.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 30, 1993.
Decided: July 7, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-90-248-R)
 Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellant.
 Katherine Baldwin Toone, Assistant Attorney General, Office of The Attorney General, Richmond, Virginia, for Appellee.
 Steven D. Rosenfield, Charlottesville, Virginia, for Appellant.
 Mary Sue Terry, Attorney General of Virginia, Office of the Attorney General, Richmond, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and WIDENER and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Petitioner, Johnny Watkins Jr., appeals the district court's dismissal of his petition for writ of habeas corpus. Finding no error, we affirm.
 
 
 2
 * A detailed recitation of the facts surrounding the murders which Watkins committed and the procedural history of his trials may be found in the opinion of the Virginia Supreme Court on direct appeal. Watkins v. Commonwealth, 229 S.E.2d 422, 427-29 (1985). We briefly summarize the factual background and subsequent proceedings.
 
 
 3
 In an effort to obtain money, at about 3:00 a.m. on November 14, 1983, Watkins shot and killed Betty Jean Barker, a clerk at a Kwik Stop market in Danville, Virginia, and absconded with $89.89. In yet another effort to obtain money, in the early morning hours of November 22, 1983, Watkins shot and killed Carl Douglas Buchanan, an employee of a Fast Fare convenience store in Danville, Virginia, and ran off with $34.73, including a $2.00 bill whose serial number was recorded.
 
 
 4
 Later that day around 4:00 p.m., Watkins' brother, Darnell Watkins, was identified as the individual who passed the bill to a local merchant. A search warrant was then obtained for Darnell's apartment. During the search of the apartment, the police discovered that Watkins shared a bedroom with Darnell. In the bedroom, the police recovered items belonging to Carl Buchanan and a 22-caliber pistol that later proved to be the pistol employed in the murder of Betty Jean Barker.
 
 
 5
 Watkins and Darnell were taken to Danville Police headquarters. At about 11:00 p.m on November 22, the police questioned Watkins. Watkins was advised of his Miranda[1] rights and signed a written waiver of those rights. During questioning, Watkins stated he wanted to consult with an attorney. At that point, the questioning ceased.
 
 
 6
 At 1:00 a.m., the police advised Watkins he was being charged with the capital murder of Buchanan. Watkins inquired why he was being charged. Before giving an explanation, the officer advised Watkins of his Miranda rights and obtained a second written waiver of rights. Watkins was then informed that his brother had implicated him. Watkins was then permitted to see Darnell and asked him whether he "snitch[ed]." When Darnell responded in the affirmative, Watkins declined to take a polygraph or discuss the shooting of Buchanan.
 
 
 7
 On November 28, another officer questioned Watkins. Watkins was advised of his Miranda rights and signed a third waiver of rights form. In his statement, Watkins admitted that he shot Buchanan, but claimed it was in self defense.
 
 
 8
 At the Barker trial, Quentin Nash was the principal witness for the Commonwealth. He testified that he and Watkins left a poker game about 1:30 a.m. on November 14 in Watkins' car. Watkins indicated to Nash that he was going to rob the Kwik Stop. Nash agreed to be a lookout. Nash testified Watkins entered the Kwik Stop while he remained in the car. Nash had second thoughts and entered the store in an attempt to persuade Watkins not to rob the place. Watkins had already purchased cigarettes. When Barker opened the cash drawer, Watkins fired twice, causing Barker to fall to the floor. Acting upon Watkins' orders, Nash ran from the store with the cash drawer. As he left the store, Nash observed Watkins leaning over the counter with the firearm in his hand. Watkins' defense strategy at the Barker trial was that Nash committed the crime.
 
 
 9
 As to the Barker murder, a jury found Watkins guilty of capital murder in the commission of robbery while armed with a deadly weapon. The jury also found Watkins guilty of robbery and use of a firearm in the commission of a felony. The jury fixed Watkins' punishment for robbery at life imprisonment and for use of a firearm in the commission of a felony at two years. In the bifurcated proceeding mandated by Va. Code Ann. §§ 19.2-264.3 and -264.4, the jury heard evidence in aggravation and mitigation of the capital murder charge. Based upon findings of Watkins' "future dangerousness" and the "vileness" of the crime, Va. Code Ann. § 19.2-264.4(C),[2] the jury fixed Watkins' punishment at death. On July 13, 1984, the trial court sentenced Watkins in accordance with the jury verdicts.
 
 
 10
 At the Buchanan trial, Darnell Watkins, Watkins' brother, was the principal witness for the Commonwealth. He testified that around midnight on November 21, Watkins drove him to a store to purchase some cigarettes. Along the way, Watkins indicated that he may want to "rob some place." Watkins v. Commonwealth, 331 S.E.2d 422, 428 (Va. 1985). Thereafter, Watkins entered a Fast Fare store and shot Buchanan. Darnell Watkins testified that Watkins left with the cash drawer and a wallet.
 
 
 11
 With respect to the Buchanan murder, another jury found Watkins guilty of capital murder in the commission of robbery while armed with a deadly weapon. The jury also found Watkins guilty of robbery and use of a firearm in the commission of a felony. The jury fixed Watkins' punishment for robbery at life imprisonment and for use of a firearm in the commission of a felony at two years. Based upon findings of Watkins' "future dangerousness" and the "vileness" of the crime, the jury fixed Watkins' punishment at death. On September 28, 1984, the trial court sentenced Watkins in accordance with the jury verdicts.
 
 
 12
 Watkins appealed both of his capital murder convictions to the Virginia Supreme Court. After consolidating the appeals, the Virginia Supreme Court affirmed both capital murder convictions and the sentences imposed. Watkins v. Commonwealth, 331 S.E.2d at 440.[3] Watkins then appealed his convictions and sentences to the United States Supreme Court. That Court denied certiorari. Watkins v. Virginia, 475 U.S. 1099 (1986).
 
 
 13
 Watkins sought state collateral relief in Danville Circuit Court by filing two petitions for writ of habeas corpus. The circuit court held an evidentiary hearing and heard the testimony of Watkins; Watkins' two trial attorneys, Henry Crider and E. L. Motley, Jr.; Darnell Watkins; Thelma Stewart, Watkins' godmother; William Fuller, III, the prosecutor for the Commonwealth; Sherman Lee, a probation and parole officer at the time of Watkins' trials; and Dr. William Lee, a clinical psychologist. After the evidentiary hearing, the circuit court dismissed Watkins' petitions. Watkins then sought permission to appeal in the Virginia Supreme Court. On April 13, 1989, the Virginia Supreme Court refused Watkins' petition to appeal. Watkins v. Murray, No. 890124 (Va. April 13, 1989). The Supreme Court of the United States denied certiorari. Watkins v. Murray, 493 U.S. 907 (1989).
 
 
 14
 Watkins then sought federal collateral relief in the United States District Court for the Eastern District of Virginia by filing a petition for writ of habeas corpus pursuant to 28 U.S.C.s 2254. On March 2, 1992, the district court dismissed all but two of Watkins' claims. Watkins v. Murray, CV-90-0248-R (W.D. Va. March 3, 1992). The district court referred the two remaining claims to a magistrate judge for an evidentiary hearing. Respondent moved the district court to reconsider its decision to grant an evidentiary hearing on the two remaining claims. The district court granted respondent's motion and dismissed the petition. Watkins v. Murray, CV-90-0248-R (W.D. Va. June 2, 1992). Pursuant to Fed. R. Civ. P. 59, Watkins moved the district court to reconsider. On September 2, 1992, the district court denied the motion.
 
 
 15
 After dismissing Watkins' habeas petition, the district court denied his application for a certificate of probable cause to appeal. On March 17, 1993, we granted Watkins' application for a certificate of probable cause to appeal.
 
 II
 
 16
 For numerous reasons, Watkins contends that Virginia's death penalty scheme is unconstitutional. The district court held that these claims lacked substantive merit and, therefore, should be dismissed. Only one of these claims merits brief discussion.
 
 
 17
 Watkins argues that the jury instructions in both of his trials were constitutionally infirm because the trial courts gave no instruction on the meaning, purpose, and application of mitigating evidence. As his argument goes, "The lack of instruction as to mitigating circumstances merely leaves the jury without any indication as to its meaning or application and unable to rationally discern those cases which are truly deserving of the death penalty." Petitioner's Brief at 16 (citations omitted).
 
 
 18
 The jury in each of Watkins' trials was instructed:
 
 
 19
 [Y]ou have convicted the defendant of an offense which may be punished by death. You must decide whether the defendant shall be sentenced to death or life imprisonment. Before the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt at least one of the following two alternatives:
 
 
 20
 (1) That, after consideration of the circumstances surrounding this offense or the prior history and background of the defendant, there is probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society; or
 
 
 21
 (2) That the defendant's conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved an aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder.
 
 
 22
 If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt either of the two alternatives, then you may fix the punishment of the defendant at death or if you believe from all the evidence that the death penalty is not justified then you shall fix the punishment of the defendant at life imprisonment.
 
 
 23
 If the Commonwealth has failed to prove either alternative beyond a reasonable doubt, then you shall fix the punishment of the defendant at life imprisonment.
 
 
 24
 (Joint Appendix (J.A.) 407). The district court held the instructions were not constitutionally infirm. We agree.
 
 
 25
 We have consistently rejected attacks to the Virginia system of instructing juries in capital cases. See, e.g., Briley v. Bass, 750 F.2d 1238, 1244-45 (4th Cir. 1984), cert. denied, 470 U.S. 1088 (1985); Jones v. Murray, 947 F.2d 1106, 1119-20 (4th Cir. 1991), cert. denied, 112 S. Ct. 1591 (1992). Jones involved a similar, if not the identical, allegation to the claim presently before us. In Jones, we held the jury instructions, virtually identical to the ones used in this case, satisfied the requirement of the Eighth and Fourteenth Amendments of individualized sentencing in capital cases. Id. at 1120.
 
 
 26
 Jones contended the following instruction did not admonish the jury to consider mitigating evidence:
 
 
 27
 If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt that the offense was outrageously or wantonly vile, horrible or inhuman then you may fix the punishment of the defendant at death or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment.
 
 
 28
 Id. at 1119. Jones also contended that the jury could infer from that instruction that if it found an aggravating factor, it had no option but to impose the sentence of death without the consideration of mitigating evidence. Id.
 
 
 29
 We rejected Jones' claims, noting the instructions in that case left "no doubt that the jury was free to consider mitigating evidence and recommend life imprisonment." Id. at 1120. We construed the term "all the evidence" as necessarily including evidence in mitigation as well as evidence in aggravation. Id. Finally, we concluded the instructions to the jury in Jones left " 'the definite impression that the jury was to take into account such evidence as was presented in mitigation and to exercise discretion in reaching a verdict on sentencing, rather than automatically imposing the death sentence upon finding an aggravating circumstance.' " Id. (quoting Briley, 750 F.2d at 1244). Our decision in Jones fully supports the district court's decision to deny Watkins' claim that the jury instructions in his trials did not pass constitutional muster. See also Briley, 750 F.2d at 1242-44 (sustaining almost identical instructions).[4]
 
 III
 
 30
 Watkins also contends that the November 28 confession to the Buchanan murder was improperly admitted into evidence during the penalty phase of the Barker trial under Edwards v. Arizona, 451 U.S. 477 (1981). The district court rejected this claim as lacking merit. The district court did not address whether the claim was foreclosed from federal review under the doctrine of procedural default.
 
 
 31
 On November 22, Watkins and his brother Darnell were taken to Danville Police headquarters for the purpose of questioning. Watkins was advised of his Miranda rights, and executed a waiver. During the questioning, Watkins indicated he wanted to see a lawyer. At that point, the interrogation ceased. Watkins, 331 S.E.2d at 429. At about 1:00 a.m. on November 23, Watkins was charged with the capital murder of Buchanan. Watkins asked why, was again advised of his rights, executed a second waiver, and was told by the police that his brother had implicated him. Id. When Watkins expressed disbelief, the police played a portion of his brother's recorded statement, and Watkins asked to see his brother. Id. While meeting with his brother, Watkins said: "Did you really snitch on me?" Darnell responded in the affirmative. Watkins then declined to discuss the shooting and said he wanted to "think about it." Id. On November 28, another officer went to question Watkins, advised him again of his Miranda rights, and Watkins executed a third waiver. Watkins then confessed to the Buchanan murder and signed each page of a written statement.
 
 
 32
 Id.
 
 
 33
 At trial, Watkins contested the voluntariness of the November 28 confession. The trial court held that it was voluntary and the Virginia Supreme Court affirmed this finding on direct appeal. When Watkins filed his petition for certiorari in the United States Supreme Court from direct appeal, he argued for the first time that because he had requested counsel on November 22, further questioning after that date was in violation of Edwards. Before the Supreme Court, the Commonwealth argued that the Court was precluded from reviewing an issue not raised below. The Supreme Court denied certiorari. Watkins v. Virginia, 475 U.S. 1099 (1986).
 
 
 34
 When Watkins presented his Edwards claim for the first time to the Virginia Supreme Court on appeal from the denial of state habeas relief, the Virginia Supreme Court expressly found that claim was barred from review under the rule in Slayton v. Parrigan, 205 S.E.2d 680 (1974) (nonjurisdictional challenges to a conviction may not be raised in a habeas proceeding if they were not asserted at trial and upon direct appeal). Consequently, Watkins' Edwards claim is procedurally barred absent a showing of cause and prejudice or actual innocence. Murray v. Carrier, 477 U.S. 478, 496 (1986); Sawyer v. Whitley, 112 S. Ct. 2514, 2517 (1992). Because Watkins has demonstrated neither cause and prejudice nor actual innocence, we cannot reach the merits of his defaulted Edwards claim.[5]
 
 IV
 
 35
 The district court awarded Watkins an evidentiary hearing on his two claims under Swain v. Alabama, 380 U.S. 202 (1965). Watkins asserts a substantive Swain claim and another on the basis of ineffective assistance of counsel. In his Swain claim, Watkins contends that the prosecutor at his trials, William Fuller III, historically and systematically struck black veniremembers, resulting in two juries without a black person serving, and that his counsel had been ineffective for failing to object to those strikes.
 
 
 36
 After the district court awarded an evidentiary hearing, the respondent moved the district court to reconsider. The respondent asserted Watkins' Swain claims were procedurally barred because they were never raised in state court. The respondent further asserted that the district court could not award an evidentiary hearing because of Watkins' failure to develop sufficient facts to support this claim in state court. The respondent rested this argument on a decision of the Supreme Court, Keeney v. Tamayo-Reyes, 112 S. Ct. 1715 (1992), decided after the district court awarded Watkins an evidentiary hearing.
 
 
 37
 In Keeney, the Court extended the cause and prejudice standard to a petitioner's failure to develop facts in state court and held that a petitioner is "entitled to a federal evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure." Id. at 1719-20. The Court further held that a petitioner's failure to develop a claim in state court will be excused if he can show that a fundamental miscarriage of justice would result from the failure to hold an evidentiary hearing. Id. at 1720. A fundamental miscarriage of justice occurs when a petitioner can demonstrate that he is actually innocent of the crime for which the death penalty was imposed. Sawyer, 112 S. Ct. 2517 ("[T]o show 'actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.").
 
 
 38
 It is clear that Watkins failed to establish an evidentiary record in state court that jurors were systematically excluded on the basis of race. Consequently, an award of an evidentiary hearing was only appropriate if Watkins could establish cause for his failure to develop the factual record and prejudice, or that a fundamental miscarriage of justice would result from a failure to hold an evidentiary hearing. Because Watkins has demonstrated neither cause and prejudice, nor that a miscarriage of justice would result from a failure to hold an evidentiary hearing, we decline to entertain his Swain claims. Consequently, Watkins' Swain claims were properly dismissed.
 
 V
 
 39
 A juror may be excluded for cause based on views on capital punishment if those views would " 'prevent or substantially impair the performance of his duties as a juror in accord with his instructions and his oath.' " Wainwright v. Witt, 469 U.S. 412, 424 (1985) (citation omitted); Witherspoon v. Illinois, 391 U.S. 510, 522 (1968). Watkins contends that potential jurors were excluded improperly from his jury panels under Witherspoon. Watkins also asserts that his two trial attorneys were ineffective because they failed to object to the exclusion of the allegedly improperly excluded veniremen.
 
 
 40
 We agree with the district court that these claims are procedurally barred under Slayton and Va. Code. Ann.s 8.01-654(B)(2)[6] because neither the substantive Witherspoon claim nor the collateral ineffectiveness claim was ever presented to any state court. See Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 111 S. Ct. 1639 (1991) (If "it is clear that state law would bar state review, exhaustion is not required, and federal review is precluded."). Because Watkins has demonstrated neither cause and prejudice, nor actual innocence, we decline to reach the merits of his defaulted Witherspoon claims.
 
 VI
 
 41
 Watkins also raises additional claims of ineffective assistance of counsel. The test for reviewing claims of ineffective assistance of counsel is well established. First, petitioner must demonstrate counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 
 
 42
 * Watkins asserts that his two trial attorneys performed ineffectively because they did not move for the appointment of an additional psychiatrist under Ake v. Oklahoma, 470 U.S. 68 (1985). Prior to Watkins' trials, counsel for Watkins requested that Watkins be examined by a psychiatrist for the purpose of determining his competency to stand trial, his state of mind on the nights of the crimes, and any possible mitigating evidence should he be convicted of the offenses. The trial court granted the motion. Dr. William Lee, a psychiatrist employed by the Commonwealth, conducted an extensive examination of Watkins.
 
 
 43
 In his evaluation, Dr. Lee concluded Watkins was competent to stand trial and sane at the time the offenses were committed. As far as mitigating evidence, Dr. Lee recommended that Watkins' trial attorneys investigate whether there was any evidence of significant impairment in terms of slurred speech or staggering on the night of the offense. Dr. Lee also opined that Watkins was not suffering from any form of mental illness or history of any type of episodic mental illness.
 
 
 44
 Watkins contends that an independent examination would have revealed, among other things, a history of substance abuse, potential brain dysfunction, and that he suffered from very high levels of anxiety and depression. At the state habeas evidentiary hearing, Henry Crider, one of Watkins' trial counsel, explained why they did not seek an independent psychiatric evaluation:
 
 
 45
 Quite frankly, I didn't see the necessity for the motion for an independent psychiatric evaluation.
 
 
 46
 Also, in light of the report we got back from Dr. Lee, I felt like based on what I could see from Dr. Lee's report, even though he was a state examiner, he had given about as an objective evaluation as I could look for under the circumstances...."
 
 
 47
 (J.A. 659).
 
 
 48
 The district court held that Watkins' trial counsels' performance did not fall below an objective standard of reasonableness because Watkins was "not entitled to 'shop around' at state expense for a psychiatrist who would adduce evidence favorable to him." (J.A. 105354) (citations omitted). We believe the district court properly dismissed this claim.
 
 
 49
 In Ake, the Supreme Court held that due process requires that an indigent defendant be provided with the services of a competent psychiatrist at state expense when the defendant's mental condition is in issue. 470 U.S. at 83. The Court went on to reject the notion that a defendant had a constitutional right to select a psychiatrist of his "personal liking." Id. at 79, 83.
 
 
 50
 In this case, Watkins enjoyed the benefit of a complete psychiatric evaluation in conjunction with the preparation of his defense. That is all that Ake requires. See Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir.) ("The mere fact [Poyner's] counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance."), cert. denied, 113 S. Ct. 419 (1992). Under the circumstances, we cannot conclude that the performance of Watkins' counsel fell below an objective standard of reasonableness. Accordingly, the district court properly dismissed this claim.
 
 B
 
 51
 Watkins also argues his trial counsel were ineffective because they improperly conceded to the jury in his trials that the death sentence was appropriate. The district court held that this claim was procedurally barred. We agree. Although presented in the state habeas proceeding, this claim was abandoned on direct appeal from the denial of state habeas relief, and is, therefore, procedurally barred. See Whitely v. Bair, 802 F.2d 1487, 1500-02 (4th Cir. 1986), cert. denied, 480 U.S. 951 (1987); Bassette, 915 F.2d at 937.
 
 
 52
 Under the circumstances, the only permissible justification for federal courts to hear this claim is if Watkins demonstrates cause and prejudice or actual innocence. Our review of the record demonstrates that Watkins failed to meet either prong of the cause and prejudice standard, and has certainly not presented a colorable claim of actual innocence. In any event, the claim lacks substantive merit as well. See, e.g., Clozza v. Murray, 913 F.2d 1092, 1098-1101 (4th Cir. 1990) (rejecting similar attack where counsel for petitioner acknowledged atrocious nature of the crimes and that he would probably want to kill petitioner), cert. denied, 111 S. Ct. 1123 (1991).
 
 C
 
 53
 We are also unpersuaded by Watkins' claim of ineffective assistance of counsel because his attorney failed to utilize evidence of his alleged habitual drug use. The evidence of alleged habitual drug use was tenuous at best. In fact, on state court collateral review, the court found that the evidence of habitual drug use was inconclusive and that Watkins had failed to demonstrate that he was under the influence of alcohol or other drugs when the crimes were committed. Under 28 U.S.C. § 2254(d), these findings are presumed to be correct unless Watkins can demonstrate the presence of one or more enumerated factors necessitating a finding that he did not receive a fair and adequate hearing on his claims. See Bassette, 915 F.2d at 940. Watkins has presented nothing to call these findings into question.
 
 
 54
 With respect to the Buchanan trial, Watkins presented evidence during sentencing that supported Watkins' claimed drug use and its effect on him. (J.A. 548-53). In addition, at the Buchanan sentencing, Dr. Lee testified that Watkins was not an addict but used drugs and alcohol in an episodic fashion. This evidence was consistent with his November 28 statement to the police that he ingested whiskey and his theory of the case. Under the circumstances, we cannot conclude that the performance of Watkins' counsel fell below an objective standard of reasonableness.
 
 
 55
 With respect to the Barker trial, Watkins' trial counsel explained their decision not to present any evidence of drug use:
 
 
 56
 [I]f I had attempted to go into evidence relating to [Watkins'] use of drugs or alcohol, particularly in the Barker case because we had taken the position, of course, that he had nothing to do with that and that was all Quinton[sic] Nash, I felt it would have made for a most volatile situation. I felt it would have hurt his case even more.
 
 
 57
 At that time we didn't know what the Jury was going to do with the case, but we had a murder of a young girl for less than $100, four shots. I think had we tried to put on evidence that our client was a drug crazed fiend, I just don't believe a Danville Jury would have had any sympathy whatsoever for him.
 
 
 58
 I, also, didn't really have, I felt, sufficient evidence to back that position up. So I feel like we would have basically been dangling him out on a limb by not really having anything to back it up in great detail.
 
 
 59
 (J.A. 671-72).
 
 
 60
 As to the Barker trial, the performance of Watkins' counsel similarly did not fall below an objective standard of reasonableness. Evidence of drug use would have been inconsistent with Watkins' theory offered in the Barker trial that Nash committed the crime. Under the circumstances, it was an eminently reasonable trial strategy to offer a theory at sentencing consistent with the theory offered at the guilt phase of the trial.
 
 VII
 
 61
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 Va Code Ann. § 19.2-264.4(C) provides:
 The penalty of death shall not be imposed unless the Commonwealth shall prove beyond a reasonable doubt that there is a probability based upon evidence of the prior history of the defendant or of the circumstances surrounding the commission of the offense of which he is accused that he would commit criminal acts of violence that would constitute a continuing serious threat to society, or that his conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim.
 
 
 [3]
 The convictions in each case of robbery and use of a firearm in the commission of a felony were not before the Virginia Supreme Court on direct appeal. Watkins v. Commonwealth, 331 S.E.2d at 427 n.1
 
 
 [4]
 Petitioner's remaining attacks on Virginia's death penalty scheme, which include: (1) Virginia's verdict form misleads the jury into believing death is mandatory if an aggravating factor is found; (2) Virginia fails to meaningfully narrow her aggravating factors; and (3) the Virginia Supreme Court's appellate review is constitutionally inadequate, have no merit
 
 
 [5]
 In any event, our result would nevertheless be the same even if a violation of Edwards occurred. The Buchanan confession was admitted only in the Barker sentencing in order to demonstrate future dangerousness. The jury in the Barker sentencing found that both the future dangerousness aggravating factor and the vileness aggravating factor independently supported the imposition of the death penalty. Under the circumstances, any Edwards violation that occurred in the Barker sentencing would not have altered the jury's finding on the vileness factor. That being the case, the sentence would be upheld notwithstanding an Edwards violation. See Briley v. Bass, 742 F.2d 155, 166 (4th Cir.) ("Since it is clear that there was evidence to sustain the 'dangerousness' finding and that the instruction on such ground was not open to attack, it is unimportant whether the instructions on 'vileness' were strictly correct or not."), cert. denied, 469 U.S. 893 (1984)
 
 
 [6]
 Va. Code. Ann. § 8.01-654(B)(2) provides:
 Such petition shall contain all allegations the facts of which are known to the petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition.
 No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition.